ALYSSON SNOW (Bar No. 225185)
**UNIVERSITY OF SAN DIEGO**
**HOUSING RIGHTS LEGAL CLINIC**
5998 Alcala Park
Barcelona 301
San Diego, CA 92110
Tel.: 619-548-0888
Fax: 619-263-5697
asnow@sandiego.edu

*Attorneys for Plaintiff*
Russ Singleton

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSS SINGLETON,<br><br>Plaintiff,<br><br>vs.<br><br>GORDON REES SCULLY MANSUKHANI, LLP, a California law firm; and DOES 1 through 10,<br><br>Defendant(s). | Civil Action No. **'25CV0034 BEN BLM**<br><br>**COMPLAINT FOR:**<br><br>• **VIOLATIONS OF FEDERAL FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §§1692, *et seq.***<br><br><u>Jury Trial Demanded</u> |

-1-

COMPLAINT

Plaintiff Russ Singleton ("Plaintiff" and "Mr. Singleton") complains and alleges against Defendant Gordon Rees Scully Mansukhani, LLP, a California law firm ("Debt Collector") and, Does 1 through 10 (collectively, "Defendants") as follows:

## INTRODUCTION

1. Federal law prohibits abusive debt collection practices by debt collectors. The reasons are clear. Deceitful debt collection practices harm the consumers and create an unfair competitive advantage to the bad actors over compliant businesses. Defendants have willfully violated these consumer protection laws. Defendants employed deceitful and unlawful means to attempt to collect purported debts by falsely representing the amount of the debt, attempting to collect a debt that it is not statutorily or contractually permitted, and by communicating directly with Mr. Singleton after notification of attorney representation.

2. In fact, even after Defendant Debt Collector knew that Mr. Singleton did not owe the amounts it claimed, it went around Mr. Singleton's legal counsel to push him to self-evict and threatened to report the bad debt on his credit. This caused Mr. Singleton extreme emotional distress. He desperately feared his family becoming homeless due to these aggressive, deceptive debt collection practices. Defendant Debt Collector's bad actions have caused Mr. Singleton to suffer damages, especially damages to his mental and emotional health.

## PARTIES

3. Mr. Singleton is an individual and, at all times mentioned in this Complaint, a resident of San Diego County, California. He lives with his disabled wife, Kimberly Singleton, and his son at 9880 Pacific Heights Blvd., San Diego, California 92121. On information and belief, the property is managed by ESA Management, LLC ("Property Management Company") and is owned by Extended Stay America, Inc. ("Landlord").

COMPLAINT

4.      Plaintiff is informed and believes that Defendant Debt Collector is a California law firm and limited liability partnership that was engaging in and transacting in business in California at all relevant times in this Complaint.  The principal business office is located at 101 W. Broadway, Suite 2000, San Diego, California 92101.

5.      The true names and capacities, whether individual, corporate, association, or otherwise of Defendants named herein as Does 1 through 10 are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes that each of the fictitiously named Defendants and/or their agents and employees are responsible in some manner for the events and happenings alleged in this Complaint, and proximately caused Plaintiff's damages.

6.      At all times herein mentioned, upon information and belief, Defendants were the agents, servants, and/or employees of the Defendants, and Defendants' acts shall mean that Defendants did the acts alleged through their officers, directors, managers, agents, representatives and/or employees while they were acting within the course and scope of said agency, authority, and employment.

7.      At all relevant times, Plaintiff is informed and believes that Defendant Debt Collector regularly and in the normal and ordinary course of business attempts to collect and collects debts on behalf of itself and/or others.  Specifically, Plaintiff is informed and believes, attorneys from Defendant Debt Collector regularly send dunning letters, make collection calls, and send emails to collect debts on behalf of itself and others.  Defendant Debt Collector correspondence to Mr. Singleton notifying him that it was a "debt collector."  On information and belief, further, debt collection services are featured on its law firm website.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction pursuant to Title 15 of the United

-3-

COMPLAINT

States Code sections 1692, *et seq.*, the federal Fair Debt Collections Practices Act, and Title 28 of the United States Code section 1331.

9. Venue is proper in the United States District Court, Southern District of California because at least one of the defendants resides in this District and a substantial part of the acts, events, and/or omissions giving rise to the claims occurred within this District.

## JURY TRIAL DEMAND

10. Mr. Singleton hereby demands a jury trial.

## FACTUAL ALLEGATIONS

11. On or around November 26, 2012, Mr. Singleton and his family started renting a room from Extended Stay America – San Diego – Sorrento Mesa ("Extended Stay America"), a property managed by ESA Management, located at 9880 Pacific Heights Blvd., San Diego, California 92121. On information and belief, Landlord is the property owner.

12. Mr. Singleton rented Room 111 of Extended Stay America, with his wife, Kimberly Singleton, and his son, Rain Singleton.

13. On information and belief, Room 111 was a one-bedroom suite with a king bed, sofa sleeper, and fully equipped kitchen.

14. At all times relevant to this Complaint, the Singleton family has rented the unit for a daily rental rate of $67.20.

15. During all times relevant to this Complaint, Mr. Singleton had a credit card on file with the Landlord. Mr. Singleton would either come down in person or would telephonically on an at least bi-weekly basis to provide express authorization to allow Property Management Company to charge the daily rate of $67.20 to his credit card on file.

16. In 2022, due to dangerous mold in his unit and the adjoining room, Landlord had to relocate the Singleton family during the repairs. The Singletons cooperated with Property Management Company to move to another unit while the

-4-

company worked to make the Room 111 habitable again.

17. At the time, there were no comparable one-bedroom suites available.

18. So, instead, Landlord offered to move Mr. Singleton and his family from Room 111 and into Rooms 107 and 108 for the same daily rental rate ($67.20) he was paying for just Room 111. On information and belief, Property Management Company made this offer because 107 and 108 were smaller rooms and achieved the closest proximation to what the Singletons were renting before the issue with the mold. The Singletons accepted the offer.

19. On or around September 19, 2022, as agreed, Mr. Singleton and his family moved into Rooms 107 and 108.

20. On or around April and May 2023, Property Management Company represented that it had concluded the work on Room 111.

21. Due to his wife's debilitating illness that was exacerbated by toxic mold, Mr. Singleton needed assurance that the mold had been properly abated. Mr. Singleton requested proof of mold remediation prior to returning to Room 111.

22. Instead of providing proof of mold remediation, Landlord unlawfully threatened that if he did not move, Landlord would start to charge him a daily rent rate of $134.40, double billing $67.20 for Room 107 and $67.20 for Room 108, instead of the agreed upon $67.20 for both rooms. This amounted to an illegal rent increase of 100 percent with no written prior notice.

23. On or around May 31, 2023, Property Management Company requested that Mr. Singleton return to Room 111 but did not provide any proof of mold remediation for the unit.

24. When he did not immediately move out, beginning in June 2023, without authorization and without prior written notice, Landlord, through its Property Management Company, started adding and processing the double charges on his credit card. This double billing was done without Mr. Singleton's consent or knowledge.

-5-

COMPLAINT

25. During this same period of time, Mr. Singleton's wife suffered a severe setback to her health. Mr. Singleton was consumed with caring for her. So, initially, he did not notice the additional charges.

26. However, by Fall 2023, he became painfully aware that his credit card had been illegally doubled charged.

27. Mr. Singleton disputed the debt.

28. When he could not get the Landlord to cease and desist adding the unlawful charges, he was forced to cancel his credit card.

29. On or about October 23, 2023, Mr. Singleton called his bank, reported the disputed charges, and cancelled the credit card.

### *Defendant Debt Collector's Debt Collection Violations*

30. On information and belief, in early January 2024, Property Management Company referred the matter for collection to Defendant Debt Collector.

31. On or around January 8, 2024, Defendant Debt Collector sent Mr. Singleton a debt collection letter. A copy of the January 8, 2024, dunning letter is attached hereto as Exhibit A and is incorporated herein by reference ("January Dunning Letter").

32. The dunning letter warns, "**Gordon Rees Scully Mansukhani, LLP is a debt collector.** We are trying to collect a debt that you owe to ESA Management, LLC ("ESA"). We will use any information you give us to help collect the debt." (bold emphasis in original).

33. The amount demanded was $3,402.40. Defendant Debt Collector's dunning letter overstated by thousands of dollars the amount purportedly owed.

34. Defendant Debt Collector inaccurately claimed that Mr. Singleton he owed a daily rate of $134.40, rather than the agreed upon rate of $67.20.

35. Defendant Debt Collector sought amounts in the dunning letter to which it was not entitled to and was prohibited by law from seeking.

-6-

36. On or about January 11, 2024, Mr. Singleton emailed Defendant Debt Collector to dispute the debt. A copy of Mr. Singleton's email is attached hereto as Exhibit B and is incorporated herein by reference ("Singleton's Debt Dispute Email").

37. Mr. Singleton explained the background and the basis of the dispute— the Property Management Company was illegally double billing.

38. In response to Mr. Singleton's dispute email, Defendant Debt Collector simply said thank you and provided a copy of the folios for Room 107 and 108. A copy of Defendant Debt Collector's email is attached hereto as Exhibit C and is incorporated herein by reference ("Debt Collection Email").

39. The folios confirm that Mr. Singleton was double charged for the rooms. He should have only been charged $67.20 per day for both rooms combined, not $134.40 per day.

40. Property Management Company issued a three-day pay or quit for only one of the two rooms and, then, filed an unlawful detainer action. It later voluntarily dismissed the unlawful detainer action due to its defective notice.

41. On or around May 7, 2024, Defendant Debt Collector sent two dunning letters, one for Room 107 and one for Room 108. True and correct copies of the dunning letters are attached hereto as Exhibits D and E, respectively, and are incorporated herein by reference.

42. Again, Defendant Debt Collector warned that the dunning letters were sent by "debt collectors" and that whatever he responded with could be used against him.

43. Again, the dunning letters falsely claimed that he owed $134.40 instead of $67.20.

44. On or around May 14, 2024, Defendant Debt Collector again attempted to collect the debt through an unlawful detainer action. The fact of filing the lawsuit is not the gravamen of the issue here—it is the attempt to collect

amounts that are not legally owed.

45.    Defendant Debt Collector also falsely claimed that Mr. Singleton would be liable for its attorney's fees and costs incurred by Landlord. No contractual provision exists that allows Defendant Debt Collector and/or the Landlord or Property Management Company to recover attorney's fees from Mr. Singleton.

46.    On or around June 10, 2024, Mr. Singleton informed Defendant Debt Collector in writing that Mr. Singleton was represented by legal counsel and provided the contact information for his attorneys. A true and correct copy of the Substitution of Attorney is attached hereto as Exhibit F to this Complaint and is incorporated herein by reference.

47.    On July 25, 2024, Mr. Singleton, through his legal counsel deposed the Persons Most Knowledgeable ("PMK") for Property Management Company.

48.    Property Management Company's PMK, in the deposition, admitted there was no written notice of the increase in rent. A true and correct copy of an excerpt of the Deposition Transcript of Somprattana Clifford is attached hereto as Exhibit G and is incorporated herein by reference.

49.    Property Management Company's PMK also admitted that:

- Mr. Singleton never agreed to the illegal rent increase;
- Property Management increased the amount from $67.20 to $134.40, which exceeds the Tenant Protection Act of 2019's rent cap rate increase and was done without proper, timely written notice; and,
- it made charges to his credit card that he did not authorize.

50.    After the depositions and overwhelming evidence that these amounts were unlawful, Property Management Company again dismissed the second unlawful detainer action against Mr. Singleton. It voluntarily dismissed its unlawful detainer action and paid Mr. Singleton, pursuant to the memorandum of costs.

-8-

COMPLAINT

51. On the other hand, Defendant Debt Collector, even hearing these facts from its own client, persisted relentlessly to collect this debt from Mr. Singleton.

52. Trying to do illegally what it could not do legally, on or around early September 2024, Defendant Debt Collector's attorney, Juliana Ferraz, communicated directly with Mr. Singleton attempting to collect the alleged debt and to get him to agree to self-evict. Defendant Debt Collector's Attorney Ferraz was aware, as she was served a copy of the substitution of attorney and had numerous conversations with Mr. Singleton's legal counsel, that he was represented by an attorney. Still, Ms. Ferraz persisted in communicating with him directly.

53. Further, on information and belief, Defendant Debt Collector's Attorney Ferraz continued to make threats to add the alleged amounts to Mr. Singleton's credit report even after Landlord decided to dismiss its case.

54. Defendants continue the unfair and deceptive business practices detailed herein. On information and belief, unless Defendants are enjoined from the unfair, unlawful, and deceptive practices detailed herein, Defendants will continue to engage in these bad actions.

55. Defendants' actions described herein are willful and knowing.

56. Plaintiff has suffered damages, including injury in fact and money damages, as a direct and proximate result of Defendants' actions.

57. Plaintiff also went through extreme emotional distress because of Defendant Debt Collector's actions.

58. Mr. Singleton knew he did not owe the double amounts. He tried to explain this to Defendant Debt Collector, but Defendant Debt Collector doubled down and not only threatened to collect the debt but then took an extra step to try to throw him and his family from the home. Mr. Singleton tried valiantly to stop this abusive debt collection, but the fight took a heavy toll on him personally.

59. Due to Defendants' conduct, he experienced, *inter alia*, stress, anxiety, depression, deep frustration, migraines, back and body paid from the tension,

COMPLAINT

inability to sleep, difficulty concentrating, familial tension, fear, and panic. It cost him mightily in terms of his physical and emotional health.

## FIRST CAUSE OF ACTION

### *Violations of the Federal Fair Debt Collection Practices Act against All Defendants*

60.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 59 of the Complaint as if stated fully herein.

61.    On information and belief, Defendant Debt Collector collect debts, either on behalf of itself or others, in the regular and ordinary course of business. Its dunning letters expressly concede it is a debt collector and its website advertises debt collection services.

62.    Defendants violated the federal Fair Debt Collection Practices Act, which regulates the collection of debts.

63.    Defendants violated Title 15 of the United States Code section 1692c(a)(1) by communicating with the consumer when Defendant Debt Collector knew that Mr. Singleton was represented by an attorney with respect to the alleged debt and had knowledge of the attorney's name and address.

64.    Defendants violated Title 15 of the United States Code section 1692e(8) by making a false representation about compensation that Defendants asserted they were lawfully able to receive. In addition to falsely claiming Mr. Singleton owed double rent, Defendant Debt Collector also claimed that Mr. Singleton was liable for its reasonable attorney's fees. Mr. Singleton has no obligation—either statutorily or contractually—to pay double rent nor Defendant Debt Collector's attorney's fees.

65.    Defendants violated Title 15 of the United States Code section 1692e(14) by communicating or threatening to communicate credit information which is known or should be known to be false, including to communicate the fact that the debt is disputed.

-10-

COMPLAINT

66.   Defendants violated Title 15 of the United States Code section 1692e(2)(A) by making a false representation of the amount of the debt in the collection of the aforementioned debt.

67.   Defendants violated Title 15 of the United States Code section 1692e(2)(B) by making a false representation about compensation that Defendants asserted they were lawfully able to receive.

68.   Defendants violated Title 15 of the United States Code section 1692e(10) by using a false representation and deceptive means to collect or attempt to collect the debt.

69.   Defendants violated Title 15 of the United States Code section 1692f by asserting the right to collect an amount that it is not entitled to and is prohibited from collecting by the law.

70.   Defendants continue to engage in these unfair and deceptive business practices and are likely to continue to engage in doing so unless enjoined from these bad acts by this Court.

71.   Defendants' actions have directly and proximately caused Plaintiff's damages, including emotional distress damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

1.   Damages in an amount to be determined at trial, including emotional distress damages;

2.   Statutory damages against Defendant Debt Collector in an amount of $1,000.00 for violations of federal Fair Debt Collections Practices Act;

3.   That Defendants be enjoined from engaging in the unfair, unlawful, and deceptive business practices described herein;

4.   Interest, if applicable;

5.   Costs;

-11-

COMPLAINT

6.    Attorney's fees; and,

7.    Any other and further relief that the court considers proper.

Dated:  January 6, 2025

Respectfully submitted by,


/s/ Alysson Snow

Alysson Snow (SBN 225185)
***Attorney for Plaintiff***
Russ Singleton

-12-

COMPLAINT